**SUMMONS ISSUED**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUL 20 2011 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARIO MAZZOLA and CAROL ANN
MAZZOLA,

        Plaintiffs,

    v.

DYNAMIC VALUES CORP.,
GARY LOGAN,
EUGENE J. LIU, M.D. and
RESTORATION SPORTS & SPINE CENTER,

        Defendants.

Civ. No. _____

CV11 - 3501

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

ROSS, J.

LEVY, M.J.

## I. INTRODUCTION

1.    This is an action for money damages for the defendants' acts that have violated the Fair

Debt Collection Practices Act, 15 U.S.C. 1692, et seq., ("FDCPA") and Health Insurance

Portability Accountability Act, 42 U.S.C § 1320d-5 ("HIPAA"). Supplemental state law claims

include breach of fiduciary duty, negligence, gross negligence, negligent infliction of emotional

distress, negligent training and supervision, and New York General Business Law § 349.

    The defendants' debt collection scheme turned a physician patient privilege into an

opportunity for harassment in the form of an illegal collection campaign that violated state and

federal privacy laws, along with common law duties. A punitive damages award is sought

because defendants' practices exploit fiduciary trust, and are aimed at the public generally.

## II. JURISDICTION AND VENUE

2.     Jurisdiction of the court is conferred by 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law.  Central to this case is the defendants' concerted effort to violate the FDCPA.

3.     Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue in this District is proper in that defendants transact business here and the conduct complained of occurred here.

6.     The defendants regularly do business within this district, and have engaged in a persistent course of conduct within this district. Defendants have also derived substantial revenue from services rendered in this judicial district and state.

7.     The defendants expected or reasonably should have expected the acts alleged in this complaint would have consequences in this judicial district and state. Defendants derive substantial revenue from interstate commerce.

8.     The defendants have otherwise sufficiently conducted business and/or purposefully availed themselves of the privileges and benefits of this judicial district and state.

9.     The defendants each have committed a tortuous act within this state.

10.    Defendants caused transactions and occurrences alleged in this complaint to take place in this judicial district and state.

### III. PARTIES

11.    Plaintiff Mario Mazzola is a natural person who resided at all relevant times in Richmond County, New York.

12.    Mario Mazzola is a "consumer" as defined by 15 U.S.C. § 1692(a)(3) of the FDCPA.

13.     Carol Ann Mazzola is an aggrieved party and a "person" as defined by § 1692k of the FDCPA.

14.     Defendant Dynamic Values Corp. ("Dynamic Values") is a business entity regularly engaged in the business of collecting debts in the state of New York with its principal place of business located at 3175 So. 2nd Street, Suite 325 Louisville, KY 40208.

15.     The principal purpose of Dynamic Values is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Dynamic Values regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

16.     Dynamic Values advertises its business enterprise as "Nationwide Debt Collection."

17.     Dynamic Values is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

18.     Dynamic Values is an unauthorized foreign corporation.

19.     Dynamic Values is an unincorporated foreign business entity holding itself out as a corporation.

20.     Gary Logan ("Logan") is the owner and principal of Dynamic Values.

21.     Logan is an officer, director, managing agent, or general agent of Dynamic Values.

22.     Logan is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

23.     The principal purpose of Logan is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone, and Logan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

24.     Eugene J. Liu, M.D. ("Dr. Liu"), at all times material to this complaint, was and is Mr. Mazzola's physician.

25. Restoration Sports & Spine Center ("Restoration Sports & Spine") is an unincorporated medical practice with its principal place of business located at 18 Ashford Avenue, Suite GE, Dobbs Ferry, NY 10522.

26. Dr. Liu is the principal physician, owner, and operator of Restoration Sports & Spine.

27. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

28. At all times material to this complaint, defendants sought to collect monies under an alleged defaulted medical debt (hereinafter "the alleged debt") and that medical debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

29. Dr. Liu and Restoration Sports & Spine at all times material to this complaint were "covered entities" as defined under HIPAA laws and the Department of Health and Human Services.

30. All factual allegations averred herein are made upon information and belief unless stated otherwise.

## IV. FACTUAL ALLEGATIONS

31. This case is about a doctor who breached his professional duties to his patient by causing a foreign, rogue, unlicensed, unregistered collection firm to harass and scare his patient into paying an inflated medical debt.

32. A veteran of the Korean War, Mr. Mazzola sought the medical treatment Dr. Liu to help with radiating back pain. On or around September of 2009, Dr. Liu diagnosed him with lumbar radiculopathy, and nerve damage caused by intervertebral disc damage.

33.     Dr. Liu treated Mr. Mazzola at his Dobbs Ferry, NY address d/b/a Restoration Sports &
Spine Center approximately six times from September 16, 2009 through February 4, 2010.

34.     Dr. Liu accepted Mr. Mazzola's insurance, United Health Care Insurance Company of
New York. Dr. Liu and his staff gave Mr. Mazzola the assurance that his insurance would cover
all of his medical care. Dr. Liu and his staff were well aware that Mr. Mazzola was retired and
dependent on Social Security disability, and would thus be unable to personally cover any
medical treatment, especially expensive cortisone injections.

35.     During and after treatment, Mr. Mazzola cooperated with Dr. Liu's office to ensure that
any monies covered and paid for by his health insurer were remitted to Dr. Liu's office. Any
monies paid directly to Mr. Mazzola by United Health were promptly remitted to Dr. Liu's
office.

36.     Throughout 2010 and 2011, Dr. Liu's collection efforts intensified with more aggressive
calls and letters.

37.     By letter dated December 9, 2010, Dr. Liu threatened to turn the account to "our" debt
collector.

38.     Sometime in or after December 2010, Dr. Liu and Restoration Sports & Spine turned
this "account" (i.e., Mr. Mazzola's protected medical information) to co-defendant Dynamic
Values.

39.     In or around December 2010, the alleged debt with its corresponding, protected medical
information were either sold to or outsourced for collection to – Dynamic Values.

40.     Dr. Liu and Restoration Sports had no legal right or justification to sell or transfer Mr.
Mazzola's protected, private medical records to a third party, especially when it was known that
said information would be used tortiously by that third against a patient.

5

41.     Dynamic Values is not a registered corporation with the Kentucky Secretary of State.

42.     Dynamic Values holds itself out as a foreign corporation, conducts business in the State

of New York, but is not registered as a foreign corporation in the State of New York. Dynamic

Values is therefore unauthorized to do business in the State of New York.

43.     Dynamic Values has no registered agents.

44.     Dynamic Values has no business registrations.

45.     Dynamic Values has no business contacts on record or in any business filing.

46.     Dynamic Values has no UCC filings for its business.

47.     Dynamic Values does conduct business out of the address 3175 South 2nd Street, Suite

325, Louisville, KY 40208. This address houses a P.O. Box to which Logan and Dynamic

Values subscribes and rents.

48.     Logan and Dynamic Values set up an illusory corporation to defraud, intimidate, and

scare consumers into paying debts.

49.     Logan and Dynamic Values use the mails and wires to harass and extort money from

New York State residents.

**Dynamic Values' Letters**

50.     Beginning in January 2011, Dynamic Values began its harassing campaign of letters and

calls. Central to the plaintiffs' case are Exhibits 1 and 2 – two shockingly unlawful collection

notices sent by Dynamic Values and Logan that transcend even the rogue standards of the debt

collection industry.

51.     **Exhibit 1,** entitled "Before Legal Action," sent by "Auto-Express Letter" on or after

January 2011, was created with complete indifference to the FDCPA.  Its independent violations

are dissected below under the First Claim for Relief.

6

52.    **Exhibit 2,** sent by Dynamic Values and Logan on or after January 2011, is a further example of the unlawful scare tactics employed by these defendants.

53.    On or about March 18, 2011 counsel for plaintiffs sent to Dynamic Values via certified mail, return receipt requested a letter of representation seeking validation of the alleged debt (**Exhibit 3**). Said letter was returned as "refused" (**Exhibit 4**) by The United States Post Office.

54.    Logan and Dynamic Values purposefully ignored the verification demand contained in the letter.

55.    Despite holding themselves out as debt collectors, Logan and Dynamic Values make it impossible to comply with the FDCPA by refusing to accept certified mail from debtors seeking to verify the debts allegedly owed by them.

56.    Despite being placed on verbal notice that that the plaintiffs were represented by counsel and that the debt was disputed in its entirety, Logan and Dynamic Values continued their collection efforts against the plaintiffs via threatening calls and letters.

**The harassing calls**

57.    In and around February and March of 2011, defendant Logan made numerous calls to the home of Mario Mazzola and Carol Ann Mazzola. Through direct contact and voicemail, Logan made explicit, direct threats to Mr. Mazzola and Ms. Mazzola to scare them into paying the alleged debt.

58.    Logan threatened several times that a lawsuit seeking outrageously high amounts were forthcoming and that "seizure" of Mr. Mazzola's social security money was imminent.

59.    Logan made legal threats and abusive insults to Ms. Mazzola to the effect that her insurance, work, and personal finances would be in severe jeopardy if she did not pay the alleged debt.

60.     Logan made several false, misleading, and deceptive statements concerning its "ownership" of the debt and its "association" to defendant Restoration Spine & Sports. When questioned about ownership and veracity of the amount sought, the defendants misrepresented the amount of the debt and the repercussions of not paying it.

61.     Logan and Restoration Sports & Spine engaged in the unauthorized practice of law by making legal misrepresentations on the phone and by letter. As set forth below, defendants Logan and Dynamic Sports and Spine made legal threats that they never intended to carry out – in part, because they were not legally authorized to carry them out.

62.     Dr. Liu, as principle, is liable for the acts of its agents, Dynamic Values and Logan, that were committed within the scope of their authority. The collection scheme was done in furtherance of Dr. Liu's and Restoration Sports & Spine's business collections and with Dynamic Values' and Logan's apparent and/or actual authority.

63.     Dr. Liu and Restoration Sports & Spine are liable for the acts of Dynamic Values and Logan because they ratified their acts and retained the benefits derived therefrom. Dr. Liu, Restoration Sports & Spine, Dynamic Values, and Logan engage each other commercially to illegally collect and enforce medical debt in violation of state and federal privacy laws.

64.     Dr. Liu and Restoration Sports & Spine intentionally and recklessly divulged Mr. Mazzola's protected medical information to Dynamic Values when it was known, or should have been known that 1) said information was protected; and that 2) it would be used to harass Mr. Mazzola and Ms. Mazzola by using invidious scare tactics of phone harassment and outrageous legal threats.

65.     Confidentiality of the physician-patient relationship is a cardinal rule of the medical profession, and is justifiably relied upon by patients seeking advice and treatment.

66.     Aside from federal Health Insurance Portability Accountability Act, 42 U.S.C § 1320d-5 ("HIPAA") privacy law, New York statutes and regulations requiring physicians to protect the confidentiality of information gained during treatment are clear evidence of the policy in New York (see, e.g., CPLR 4504, subd [a]; 4507; Education Law, § 6509, subd [9]; 8 NYCRR 29.1 [b] [8]; Mental Hygiene Law, § 33.13, subds [c], [d]; Public Health Law, § 2803-c, subd 3, par f; § 2805-g, subd 3).

67.     Mr. Mazzola never consented to the disclosure of his medical information.

68.     Mr. Mazzola did not waive any rights to privacy and confidentiality of his protected medical information.

69.     Any disagreement over an alleged indebtedness does not provide any excuse, justification, or defense to disclosure of Mr. Mazzola's protected medical information. Mr. Mazzola's personal, physical condition was never in issue.

70.     In so making their unauthorized disclosure, defendants violated HIPAA 42 U.S.C. 1320d-6, which imposes stiff fines and terms of imprisonment. The facts of defendants' wrongful disclosure infer the intent to sell, transfer, or use individually identifiable health information for commercial gain. This violation imposes a fine up to $250,000 and/or imprisonment up to 10 years.

71.     As a result of these violations, Mario Mazzola suffered actual, physical injuries. The defendants' misconduct inflicted serious shock to Mr. Mazzola's nervous system. He further suffered mental anguish, confusion, sleep deprivation, stomach pains, anxiety, nervousness, headaches, fear, worry, embarrassment, humiliation, intimidation, acrimony and disquietude in his marriage, loss of appetite, emotional distress, worry, loss of happiness, irritability, loss of tranquility, indignation, and an aggravation to his pre-existing ill and infirm condition.

72.    As a result of these violations, Carol Ann Mazzola suffered actual, physical injuries. She suffered negative feelings of confusion, anxiety, nervousness, embarrassment, fear, worry, humiliation, intimidation, acrimony and disquietude in her marriage, loss of appetite, emotional distress, mental anguish, acrimony and disquietude in her marriage, irritability, loss of tranquility, indignation, fear of insurance and financial losses and fear over threats to her work security.

73.    The defendants are jointly and severally liable to the plaintiffs. They acted in concert to commit an injury, breaching a common duty thereby creating single, indivisible injury to the plaintiffs.

## V.  FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
(Violations of the FDCPA)

74.    The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

75.    Central to plaintiffs' case are the federal FDCPA claims against the defendants. The pivitol facts involve the collaborative collection efforts of the defendants. All supplemental, state law claims arise under the same set of facts.

76.    The defendants repeatedly violated the FDCPA with their manner of collection as well as through their separate, false, misleading, and deceptive statements.

77.    In this complaint, each statement contained in Exhibit 1 is examined as set forth below:

**Statement 1.**

> *"We can file a negative credit report against you with all major credit reporting agencies, which should cause a drastic drop in your credit score."*

78.    This statement threatens to communicate false information to the credit reporting agencies in violation of § 1692e(8). It deceptively states that Dynamic Values can file a negative credit *report*, not simply a collection account as it is so obligated. That communication is a

threat to take action than cannot legally – nor was intended – be taken in violation of in violation of § 1692 e(5).

**Statement 2**

*"We can file a lawsuit against you asking for $12,190 plus interest."*

79.    This statement communicates a threat to take action than cannot legally be taken in violation of in violation of § 1692e(5). Dynamic Values is not licensed by the Department of Consumer Affairs. Nor is it registered to do business under the Business Corporation Law.

80.    This statement attempts to collect a debt with interest when it was not expressly authorized by the agreement creating the debt or permitted by law in violation of §§ 1692f and 1692f(1).

81.    This statement falsely represents the legal amount of any debt in violation of § 1692e(2)(a).

**Statement 3**

*"We can after filing a lawsuit against you ask the court to order a forensic accountant to examine both your personal and business records and income tax returns."*

82.    This statement communicates a threat to take action that cannot legally be taken in violation of in violation of § 1692e(5). Dynamic Values never intended to take this action therefore violating § 1692e(5).

83.    A "forensic" examination of Mr. Mazzola's personal and business records would amount to an unauthorized intrusion. Dynamic Values would have no legal basis to examine Mr. Mazzola's business records on income tax returns. Dynamic Values never successfully hired a forensic accountant as a disclosure device in a consumer debt case. Furthermore, Dynamic Values would have no legal basis to examine Mr. Mazzola's business records.

84.     To the least sophisticated consumer, this statement could imply a threat of undue

criminality in violation of §§ 1692d, 1692e, and 1692f.

### Statement 4

*"We will after filing a lawsuit against you have the legal right to supply you with several hundred interrogatories asking you more personal and business questions, which the court will require you to act."*

85.     Threatening "several hundred interrogatories" constitutes an action that defendants did

not intend to carry out in violation of § 1692e(f). In an action for indebtedness, there simply

exists no conceivable purpose to imposing "several hundred interrogatories," which would itself

be unduly burdensome, objectionable, and designed to harass Mr. Mazzola, in violation of §§

1692(d) and 1692e(f).

### Statement 5

*"We will after filing a lawsuit against you have the legal right to schedule a deposition for you lasting several hours in the collection attorneys' office...ask you many personal and business questions." Your answers would be recorded by a court reporter and can be used by us to enforce collection either at trial or by other methods."*

86.     This statement constitutes an action that defendants did not intend to carry out in

violation of § 1692e(5) due to its cost-prohibitive nature.  Threatening to "ask...many personal

and business questions" implies an undue probing that which the least sophisticated consumer

could construe as a private intrusion, the natural consequence of which would be to harass,

oppress or abuse in violation of § 1692d.

### Statement 6

*"The attorney handling the case will have a legal right to ask the court to award judgment against you for attorney fees."*

87.     In New York State, attorneys fees are only recoverable by contract or statute. Dynamic

Values possesses no contract that entitles it to attorneys' fees. This statement is an attempt to

collect attorneys' fees without express authority by agreement or law in violation of §§ 1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10).

### Statement 7

*"Based upon our initial investigation we estimate it will take the attorney about 30 hours to investigate, research, prepare for and try a case such as this. If this estimate is correct reasonable attorney's fees are $250 per hour times 30 hours which would be $7,500."*

88. This statement, as consistent with the others, is a threat that defendants did not intend to carry out in violation of § 1692e(5). It's a further attempt to collect a debt without express authority in violation of §§ 1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10).

### Statement 8

*"Some courts allow for a plaintiff to ask for additional damages called compensatory, punitive or statutory damages."*

89. This statement is a threatening attempt to impose fees and punitive damages not expressly authorized by the agreement creating the debt or permitted by law in violation of §§ 1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10).

### Statement 9

*"If we filed a lawsuit against you in a court that allowed this we would ask for an additional $25,000."*

90. This statement makes a threat to increase Mr. Mazzola's liability without express authority by agreement or law in violation of §§ 1692(f), 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10). It threatens a punitive penalty that could not be legally carried out in violation of § 1692e(5).

### Statement 10

> *"Even though you currently owe only $12,190 plus interest it is possible if this matter proceeds to litigation and if we were successful a court could possibly award us as much as $37,190."*

91.    This statement is false representation in violation of §§ 1692d and 1692e(2). Defendants would not be legally able to obtain that amount of money and were never expressly authorized to collect this amount in violation of §§ 1692f, 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10). This statement is a threat, the natural consequence of which is to harass and scare Mr. Mazzola into paying this debt in violation of § 1692d.

**Statement 11**

> *"Added onto that if the case took 30 hours another possible award of $7,500 in attorney fees it would be possible that a court could enter a judgment against you for as much as $44,690."*

92.    This threatening statement is another attempt to pile on fees without express authority in violation of §§ 1692f, 1692f(1), 1692d, 1692e, 1692e(2)(a) and (b), 1692e(5), and 1692e(10). To threaten recovery of over three times the balance due is a sham, and is unconscionable in violation of §1692f.

93.    The letter fails to contain any language required under §1692g.

94.    The entire letter, and its constituent statements, can be construed by the least sophisticated consumer as being composed by an attorney in violation of §1692e(3).

95.    Section 1692(g) is a strict liability provision. Any violation, regardless of intention, subjects defendants to civil liability.

96.    The plain language of FDCPA § 1692n permits and encourages enforcement of applicable state law claims that afford greater protection than the FDCPA.

97.    As the direct result of the defendants' FDCPA violations, the plaintiffs have suffered pecuniary and non-pecuniary damages.

98.     As a result of the above violations, the plaintiffs are entitled to actual damages, statutory damages of up to $1,000, attorney's fees, and costs.

99.     As a result of these violations, Mario Mazzola and Carol Ann Mazzola suffered actual damages, which include but are not limited to, those injuries set forth in paragraphs 71 through 73 in this complaint.

## VIII.    SECOND CLAIM FOR RELIEF AGAINST DR. LIU AND RESTORATION SPORTS & SPINE
### (Breach of Fiduciary Duty)

100.    The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

101.    The duty not to disclose confidential personal information springs from the implied covenant of trust, confidence, and loyalty that is inherent in the physician-patient relationship, the breach of which is actionable in tort.

102.    An action in tort for breach of a duty of confidentiality and trust has long been acknowledged in the courts of the State of New York.

103.    Dr. Liu and Restoration Sports & Spine owed Mr. Mazzola, by virtue of their physician-patient relationship, duties of trust, confidence, good faith, and undivided loyalty throughout their relationship and thereafter.

104.    Dr. Liu and Restoration Sports & Spine were obligated to act in the best interest – and in good faith – toward Mr. Mazzola throughout their physician-patient privileged relationship.

105.    Dr. Liu and Restoration Sports & Spine owed Mr. Mazzola the fiduciary duties not to disclose his protected medical information and records to Dynamic Values and Logan without Mr. Mazzola's consent.

106.    Dr. Liu and Restoration Sports & Spine breached their fiduciary duties by impermissibly disclosing and/or selling Mr. Mazzola's medical records, which compromised the

security and privacy of protected health information, and were used to threaten serious financial, reputational, and physical harm to Mr. Mazzola and Ms. Mazzola.

107.    Mr. Mazzola placed confidence in Dr. Liu and Restoration Sports & Spine. Mr. Mazzola reasonably relied on their superior expertise and knowledge relating to his medical care and continued well-being.

108.    Mr. Mazzola possessed reasonable privacy expectations against disclosure of his sensitive personal medical information. Mr. Mazzola at all times intended confidentiality.

109.    Dr. Liu and Restoration Sports & Spine intentionally breached their fiduciary duties by knowingly disclosing Mr. Mazzola's protected medical information to Dynamic Values and Logan, when it was known that they would use that information to abuse and harass Mr. Mazzola and Carol Anne Mazzola.

110.    Dr. Liu and Restoration Sports & Spine betrayed Mr. Mazzola's trust and breached their fiduciary duties by impermissibly disclosing and/or selling his medical records to an illegal boiler-room styled collection outfit to terrorize a medical patient over a disputed bill for services.

111.    The intentional and reckless manner in which the defendants violated their fiduciary duties to Mr. Mazzola represents a reckless disregard for the health and safety of Mr. Mazzola and Ms. Mazzola. Dr. Liu and Restoration Sports & Spine were aware of Mr. Mazzola's extensive, sensitive, and precarious medical history, including his daily regimen of approximately eight medications for physical and mental ailments. The defendants knew that Mr. Mazzola was physically and financially vulnerable.  Elevating factors that exist here to warrant the imposition of punitive damages including without limitation: 1) the extent of the physical and financial harm caused to Mario Mazzola and Carol Anne Mazzola; 2) that

defendants' misconduct was and is aimed at the public generally; 3) that the defendants engaged in repeated actions of this type; and 4) the harm – caused by intentional breaches of confidentiality and outrageous legal threats – was the result of intentional trickery and deceit. Therefore, a punitive damages award is necessary to punish the defendants and deter their future unlawful practices.

112. Punitive damages must be assessed against Dynamic Values because Logan, the "superior officer of Dynamic Values," directly participated in the misconduct for which punitive damages are sought.

113. The defendants' breach of their fiduciary duties proximately caused the plaintiffs' injuries as alleged herein.

114. As a result of the defendants' breach of their fiduciary duties, Mario Mazzola and Carol Ann Mazzola are entitled to compensatory damages, punitive damages, and actual damages, which include but are not limited to recovery for those injuries set forth in paragraphs 71 through 73 in this complaint.

## IX.  FIFTH CLAIM FOR RELIEF AGAINST DR. LIU and RESTORATION SPORTS & SPINE
(Negligence)

115. The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

116. Dr. Liu and Restoration Sports and Spine owed Mr. Mazzola the professional common law duty, by virtue of their physician-patient privilege, to use reasonable care in protecting Mr. Mazzola's protected medical information.

117. Dr. Liu and Restoration Sports and Spine owed Mr. Mazzola the professional duty, by virtue of their physician-patient privilege, to use reasonable care in collecting upon the alleged debt.

118.    Dr. Liu and Restoration Sports and Spine as HIPAA covered entities breached their duties by impermissibly disclosing and/or selling Mr. Mazzola's medical records thereby compromising the security and privacy of his protected health information thus posing serious financial, reputational, and physical harm to Mr. Mazzola and Ms. Mazzola.

119.    The defendants' violations of state and federal statutes, including HIPAA, amount to negligence *per se*.

120.    The defendants' violations of state and federal statutes, including HIPAA, serve as evidence of negligence.

121.    Defendants Dr. Liu and Restoration Sports and Spine were HIPAA covered entities.

122.    Dr. Liu and Restoration Sports and Spine breached their duties of care by disseminating Mr. Mazzola's protected medical information to Logan and Dynamic Values.

123.    Dr. Liu and Restoration Sports and Spine were privy to Mr. Mazzola's sensitive and extensive medical history, and were aware of his precarious medical condition, including his need to avoid the physical, mental and emotional stresses imposed by abusive and harassing collection activities.

124.    The defendants' negligence proximately caused the plaintiffs' injuries as alleged herein.

125.    As a result of the defendants' negligence, Mario Mazzola and Carol Ann Mazzola are entitled to compensatory damages, punitive damages, and actual damages, which include but are not limited to, those injuries set forth in paragraphs 71 through 73 in this complaint.

## XI.  FOURTH CAUSE OF ACTION AGAINST DR. EUGENE LIU and RESTORATION SPORTS & SPINE
### (Negligent Infliction of Emotional Distress)

126.    The plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

127.    Dr. Liu and Restoration Sports and Spine owed Mr. Mazzola the professional common law duty, by virtue of their physician-patient privilege, to use reasonable care in protecting Mr. Mazzola's protected medical information.

128.    Dr. Liu and Restoration Sports and Spine breached their duties by impermissibly disclosing and/or selling Mr. Mazzola's medical records, thereby compromising the security and privacy of his protected health information and as a result causing serious financial, reputational, and physical harm to Mr. Mazzola and Ms. Mazzola.

129.    The defendants' violation of state and federal statutes, including HIPAA, amount to negligence *per se*.

130.    The defendants' violation of state and federal statutes, including HIPAA, serve as evidence of negligence.

131.    Dr. Liu and Restoration Sports and Spine owed Mr. Mazzola the professional duty, by virtue of their physician-patient privilege, to use reasonable care in collecting upon its alleged debt.

132.    Dr. Liu and Restoration Sports and Spine breached their duties of care by disseminating Mr. Mazzola's protected medical information to Logan and Dynamic Values, an illegal collection outfit.

133.    Dr. Liu and Restoration Sports and Spine created an unreasonable risk of causing Mario Mazzola's and Carol Ann Mazzola's emotional distress.

134.    The negligent manner of violating Mr. Mazzola's privacy rights, coupled with the reckless and intentional manner of placing Mr. Mazzola's protected medical information into the hands of Logan and Dynamic Values, amounted to extreme and outrageous conduct that no patient would tolerate in a civilized society.

135. Dr. Liu and Restoration Sports and Spine caused severe emotional distress to Carol Anne Mazzola under the "bystander theory" as she was in the "zone of danger" and witnessed the injuries negligently inflicted upon Mario Mazzola. By unleashing Logan and Dynamic Values to harass and abuse the Mazzola household, Dr. Liu and Restoration Sports and Spine created the unreasonable and foreseeable risk of danger to Carol Ann Mazzola.

136. Dr. Liu and Restoration Sports and Spine knew that Carol Anne Mazzola was married to and resided with the plaintiff, Mario Mazzola.

137. The plaintiffs' emotional distress was foreseeable.

138. The defendants' negligent conduct proximately caused the plaintiffs' injuries as alleged herein.

139. As a result of the defendants' negligent infliction of emotional distress, Mario Mazzola and Carol Ann Mazzola are entitled to compensatory damages, punitive damages, and actual damages, which include but are not limited to, recovery for those injuries set forth in paragraphs 71 through 73 in this complaint.

## X. FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
(Gross Negligence/Willful Misconduct)

140. The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

141. Dr. Liu and Restoration Sports and Spine owed Mr. Mazzola the professional common law duty, by virtue of their physician-patient privileged relationship, to use reasonable care in protecting Mr. Mazzola's protected medical information.

142. The defendants' conduct rises to the level of gross negligence and willful misconduct because of the intentional breaches of state and federal statutory obligations and common law duties, as set forth in this complaint, in an attempt to scare Mario Mazzola and Carol Ann Mazzola into paying a disputed bill for services.

20

143.    The defendants together operate a multi-state, illegal debt collection scheme, using the mails and wires, to collect inflated medical debts of Dr. Liu and Restoration Sports and Spine.

144.    The intentional and reckless manner in which the defendants violated their fiduciary duties to Mr. Mazzola represent extreme and outrageous conduct which is aimed at the public generally. Therefore, a punitive damages award is necessary to punish the defendants and deter future unlawful practice.

145.    The defendants failed to use even slight care, and were so careless as to show complete disregard for the rights and safety of others, including the rights and safety of Mario Mazzola and Carol Ann Mazzola.

146.    The defendants' gross negligence/willful misconduct proximately caused the plaintiffs' injuries as alleged herein.

147.    As a result of the defendants' gross negligence/willful misconduct, Mario Mazzola and Carol Ann Mazzola are entitled to compensatory damages, punitive damages, and actual damages, which include but are not limited to, those injuries set forth in paragraphs 71 through 73 in this complaint.

## XI.  SIXTH CAUSE OF ACTION AGAINST DR. LIU and RESTORATION SPORTS & SPINE
### (Negligent Training and Supervision)

148.    The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

149.    Defendants Dr. Liu and Restoration Sports & Spine owed the plaintiffs a duty to train, and/or supervise its agents and employees properly.

150.    The evidence plausibly infers that Logan and Dynamic Values were agents or employees of Dr. Liu and/or Restoration Sports & Spine.

151.   Dr. Liu and Restoration Sports & Spine owed Mr. Mazzola the non-delegable duty to ensure that their common law and statutory duties owed to Mr. Mazzola were not violated.

152.   Dr. Liu and Restoration Sports & Spine failed to properly train and supervise Logan and Dynamic Values with regard to violating medical patients' privacy and confidentiality.

153.   The defendants' actions and omissions constitute negligence in that Dr. Liu and Restoration Sports & Spine owed Mr. Mazzola a duty to train and/or supervise Logan and Dynamic Values properly.

154.   The defendants' breaches demonstrated a want of scant care and a grossly negligent and/or reckless indifference to the rights of Mario Mazzola and Carol Ann Mazzola.

155.   The defendants' breaches were an extreme departure from ordinary care.

156.   The defendants' negligent conduct proximately caused the plaintiffs' injuries as alleged herein.

157.   As a result of the defendants' negligent training and supervision, Mario Mazzola and Carol Ann Mazzola are entitled to compensatory damages, punitive damages, and actual damages, which include but are not limited to, recovery for those injuries set forth in paragraphs 71 through 73 in this complaint.

## VI. SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Violations of NYGBL § 349)

158.   The plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

159.   NYGBL § 349 declares unlawful deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state.

160.   The conduct complained of occurred during, and in furtherance of, defendants' for-profit business enterprise of pursuing consumers for alleged defaulted debt obligations.

161.   At all times material to this complaint, defendants' deceptive acts and practices that gave rise to the claims herein occurred while defendants conducted their business of treating consumer patients and collecting consumer debts.

162.   Defendants' acts and practices have been directed entirely at consumers. Defendants' acts and practices have broad impact on the New York consuming public.

163.   Defendants' collection acts are part of a recurring practice against large numbers of consumers in furtherance of their business model of volume-based, ruthless collection activity.

164.   Defendants' offending collection practices have the capacity and tendency to deceive and mislead a significant percentage of consumers in a material way because they mislead and directly misstate the rights of consumers. These acts contribute to an increasing number of personal bankruptcies, and lead to marital instability and job loss, which are all significant social concerns that applicable federal and state consumer protection laws were designed to prevent.

165.   Defendants violate NYGBL in the following ways without limitation: a) using illegal tactics to collect debts; b) making false representations relating to the alleged debt and their authority to collect upon it; c) failing to verify the debt pursuant to federal law; d) making material misrepresentations to plaintiffs during the course of attempting to collect on the alleged debt; e) repeatedly and continuously making such collection efforts in violation of federal law; f) purposefully avoiding state licensing and registration obligations while holding itself out as a corporation; g) falsely stating that Dynamic Values is registered to do business when it is not; h) collecting and attempting to collect debts without a debt collector's license and authority to do business; i) knowingly and repeatedly violating the FDCPA; and j) colluding to commit illegal acts.

166.   The defendants' breaches of those duties were the proximate cause of damages suffered

by Mario Mazzola and Carol Anne Mazzola as alleged in paragraphs 71-73 of the complaint.

167.   As a result of these violations of NYGBL § 349, Plaintiff is entitled to an injunction

barring defendants from engaging in deceptive acts and practices, and to recover actual

damages, three times the actual damages up to $1,000, costs and reasonable attorneys' fees

pursuant to NYGBL § 349(h).

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request the court grant the following relief:

a. On the FIRST CLAIM FOR RELIEF (FDCPA), a declaratory judgment that

defendants violated the FDCPA, actual damages, statutory damages, costs and reasonable

attorneys' fees pursuant to 15 U.S.C. § 1692k;

b. On the SECOND CLAIM FOR RELIEF (BREACH OF FIDUCIARY DUTY), actual

damages, compensatory damages and punitive damages, as the defendants' actions and behavior

were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high

degree of moral culpability, are aimed at the public, and harm the public interest;

c. On the THIRD CLAIM FOR RELIEF (NEGLIGENCE), actual damages,

compensatory damages and punitive damages as the defendants' actions and behavior were and

are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of

moral culpability, are aimed at the public, and harm the public interest;

d. On the FOURTH CLAIM FOR RELIEF (NEGLIGENT INFLICTION OF

EMOTIONAL DISTRESS), actual damages, compensatory damages and punitive damages as

the defendants' actions and behavior were and are intentional, willful, deliberate, grossly

wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public, and harm the public interest;

 e. On the FIFTH CLAIM FOR RELIEF (GROSS NEGLIGENCE/WILLFUL MISCONDUCT), actual damages, compensatory damages and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public, and harm the public interest;

 f. On the SIXTH CLAIM FOR RELIEF (NEGLIGENT TRAINING AND SUPERVISION), actual damages, compensatory damages and punitive damages as the defendants' actions and behavior were and are intentional, willful, deliberate, grossly wanton, reckless and demonstrate a high degree of moral culpability, are aimed at the public, and harm the public interest;

 h. On the SEVENTH CLAIM FOR RELIEF (NYGBL § 349), actual damages, three times the actual damages up to $1,000, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h); and for

 i. Such other and further relief as law or equity may provide.

Dated: New York, New York
   July 15, 2011

           Jesse Langel (JL-7079)
           The Langel Firm
           225 Broadway, Suite 700
           New York, NY 10007
           Tel: (646) 290-5600
           Fax: (646) 964-6682
           jesse@langellaw.com

# Before Legal Action

Was considered by your creditor and before we purchased your delinquent account we discussed with them the many legal options that are available to enforce collection. Since you have not been able to cooperate and communicate with us properly concerning this very serious matter we are now going to share with you what legal options we discussed. We highly recommend that you contact us upon receipt of this letter if you wish to avoid many of the actions listed here. This letter is to advise you we intend to invoke specified remedies permitted by law that we ordinarily invoke under these circumstances if you refuse to cooperate with us in finding a resolution to this matter.

We can file a negative credit report against you with all major credit reporting agencies which should cause a drastic drop in your credit score.

We can file a lawsuit against you asking for  **$12,190.00** plus interest.

We can after filing a lawsuit against you ask the court to order a forensic accountant to examine both your personal and business records and income tax returns.

We will after filing a lawsuit against you have the legal right to supply you with several hundred interrogatories asking you more personal and business questions which the court will require you to answer.

We will after filing a lawsuit against you have the legal right to schedule a deposition for you lasting several hours in the collection attorneys office where the attorney again will ask you many personal and business questions which the court will require you to appear for and answer. Your answers would be recorded by a court reporter and can be used by us to enforce collection either at trial or by other methods.

The attorney handling the case will have a legal right to ask the court to award a judgment against you for attorney fees. Based upon our initial investigation we estimate it will take the attorney about 30 hours to investigate, research, prepare for and try a case such as this. If this estimate is correct reasonable attorney fees are $250.00. per hour times 30 hours which would be approximately $7,500.00.

Some courts allow for a plaintiff to ask for additional damages called compensatory, punitive or statutory damages. If we filed a lawsuit against you in a court that allowed this we would ask for an additional $25,000.00. Even though you currently owe only $12,190.00. plus interest it is possible if this matter proceeds to litigation and if we were successful a court could possibly award us as much as $37,190.00. Added onto that if the case took 30 hours another possible award of $7,500.00. in attorney fees it would be possible that a court could enter a judgment against you for as much as $44,690.00.

It is in your best interest to pay this $12,190.00. balance now. We are receptive to any **Reasonable ---- Reasonable---- Reasonable** payment arrangements that you may have in mind. This matter now rests in your hands. Please contact our office now!

# (502) 422-3725

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

Self-Contained Paper Saving Document

Auto-Express Letter™

# WHAT TO DO IF YOU RECEIVE A DEMAND FOR PAYMENT FROM A DEBT COLLECTION AGENCY

These are excerpts published from a consumer website advising debtors how to effectively communicate with a debt collector when they receive a demand for payment. Since the debt problem you are currently experiencing with Dynamic Values is similar to many listed here we are supplying this article to you in hopes that it may enlighten you to a way to solve your current problem with us.

If you owe money to some other person you are a debtor of that person. You "owe" money if you have a legal obligation to pay it. A debt collection agency is a business that collects debts that were originally owed to other businesses or creditors.

## WHAT TO DO FIRST

If you do not respond to a collectors demand for payment in some way, you might end up with a court judgment against you for the full amount demanded and more. Do not let that happen! If a court judgment is entered against you, it will be included in your credit record and in future credit reports. Also, you may be forced to pay the judgment debt by an execution on your earnings (garnishment) or on other property you may own, either now or at a later time.

If you are named as a defendant in a debt collection lawsuit, <u>do not allow a judgment to be entered against you for more than the amount that you actually owe</u>. If a lawsuit has been filed, try to negotiate an agreement in which the collector promises that no court judgment will be entered against you. The collector may do this in exchange for your promise of payment.

## COMMUNICATE WITH THE COLLECTOR

If you receive a demand for payment of a debt (commonly referred to as a DUNNING LETTER), it is usually in your best interest to respond immediately. Do not delay or you may lose important rights. Some of your rights can only be exercised if you act <u>within 30 days</u> after receiving an initial written notice from a debt collection agency.

If you owe the entire amount demanded and can afford to pay the full amount of the debt, tell the collector that you will pay the full amount, either at once or in periodic installments in amounts and at times you can manage. (e.g., monthly).

If you owe <u>part but not all</u> of the amount claimed, tell the collector that you will pay <u>only</u> the amount that is <u>lawfully owing</u>. Tell the collector that you will pay that amount now, or in installments in amounts and at times that you can manage---<u>but</u> that you will do this only if the collector waives (forgives) the rest of the amount demanded (what is <u>not</u> owing).

## BARGAIN WITH THE COLLECTOR

Do not simply pay what a collector demands unless you know the amount demanded is correct.  If it is not correct, do not pay just to get the collector off your back. Most debtors have some bargaining power (control over the situation). That is because any payment ordinarily must come from the debtor, and only the debtor has the power to make payment voluntarily, without a lawsuit. Given the fact that you as a debtor have <u>some</u> bargaining power, what can you ask in return? It depends on the situation. Here, again, you must act wisely. For instance-----------

You can offer to pay the original debt in full by a certain date, <u>if</u> the collector agrees to waive (forgive) any interest, finance charges, collection charges, attorney fees, and other added charges. But you have to ask for such a waiver; the collector will not offer it.

You can also try to persuade the collector to waive forgive interest and added charges <u>if</u> you (a) agree to pay the original amount by installments, and (b) then carry out your agreement by paying everything you have promised to pay on time. Do not promise something you cannot or will not do. Collectors keep track of "broken promises" which could hurt you down the road.

In deciding upon the approach you will take, remember that you usually can achieve a better result if you offer to pay everything you owe in a single payment. It is also true that most debt collection agencies are willing to enter into an agreement for payment by installments if the amounts paid by the debtor are large enough to justify the expense. An offer to pay by installments will be less attractive to the collector than immediate payment in full.

Where appropriate, ask the collector for certain promises, such as (1) a promise not to report your late payment to the collectors credit reporting agency.

Resolving the problem in a way that is agreeable to both you and the collector will save the collector and you the expense of a lawsuit. In addition, the collector will get your payment earlier. Resolving the problem, in short, will benefit both of you. In negotiating with the collector, keep in mind what will happen if you do not reach a mutually acceptable settlement (resolution of the problem).

The collector may file a lawsuit against you, and, if you do not defend it, obtain a court judgment against you for the amount of the alleged debt, plus interest, court costs, and possibly, attorney fees.

## IT IS NOT A GOOD IDEA TO HIDE

The opposite of attempting to negotiate a resolution of a problem is pretending that there is no problem, and either avoiding or hiding from (evading) the collector.

A debtor who attempts to evade a collector, or who refuses to respond to a collector's demand for payment or other communications, may injure himself or herself, at least in the long term. For instance, a debtor who refuses to communicate with a collector risks the filing of a collection lawsuit and the entry of a court judgment that may ultimately require the debtor to pay a lot more than the amount that was originally owed.

Some people worry excessively about an unpaid debt, and others avoid thinking about it at all. It is common for people who have lost their jobs or find themselves drowning in debt to hide from their creditors--and the fact from their families--because they are too humiliated to admit the truth. In situations of that kind, it is also common to refuse to open mail or accept phone calls from collectors. That, however, is dangerous. By refusing to accept or read a collector's letters, a debtor may not know about important facts, such as its intention to repossess property or file a lawsuit, or its willingness to accept lower payments or to waive interest and/or charges if payment is made by a certain date. Also shielding one's family from the facts can cut off support that may be needed more than ever. As time goes by, the collector will invest time and money on the claim, and it will become increasingly difficult for you and the collector to resolve the dispute in a way that is beneficial to both of you.

Unless a debt collection agency has instructed you to pay the original creditor directly, it's important to send your payments to the debt collection agency and not the original creditor. The debt collection agency may own a claim that is assigned to it, and may be entitled to recover from you any losses that it suffers because your payment was made to the original creditor instead of to it.

If the collector has filed an abstract of judgment against any real property you may own or intend to acquire such as a home or land you will need to record that payment has been made in order to sell the property later on.

Requiring a collector to stop contacting the debtor may be a dangerous strategy. It may only force the collector to file a collection lawsuit, repossess the property, (if any) that secures the debt, or make a claim against a co-signer, when it otherwise might not do so. In almost all situations, the debtor's best interests will be served by actively communicating and interacting with the collector.

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

Exhibit 2

# THE LANGEL FIRM

**PRACTICING EXCLUSIVELY IN THE AREA OF CONSUMER RIGHTS LAW**

225 BROADWAY, SUITE 700
NEW YORK, NY 10007
TEL: 646-290-5600
FAX: 646-964-6682
JESSE@LANGELLAW.COM
WWW.THELANGELFIRM.COM

March 18, 2011

Certified Mail, Return Receipt Requested

Dynamic Values Corporation
3175 South 2nd Street, Suite 325
Louisville, KY 40208

     Re:    Mario Mazzola; your account number 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

To Whom It May Concern:

    Please be advised that his office represents Mario Mazzola. My client disputes that he owes the debt you seek to collect. This is a request for validation pursuant to the Fair Debt Collection Practices Act. Please provide verification that proves that my client owes the full amount you claim.

                  Very truly yours,

                  Jesse Langel

JL/ss

4

**≡ UNITED STATES**
**POSTAL SERVICE**®

CHURCH STREET STA APC 1
90 CHURCH ST
NEW YORK, NY 10007-9998

03/23/2011                    04:57:02 PM
==========================================

| Product Description | Sales Receipt Sale Qty | Unit Price | Final Price |
|---|---|---|---|
| LOUISVILLE, KY 40285 Zone-5 First-Class Mail® Letter 0 lb. 0.40 oz. * Expected delivery Saturday, March 26. | | | $.44 |
| Certified Mail™ | | | $2.80 |
| Return Receipt (U.S. Mail) Label #: 7196 9002 0340 3314 2268 | | | $2.30 |

Issue Postage:                    ========
                                     $5.54

Total: *Mazzola-NoR*            ========
                                     $5.54

Paid by:
DebitCard                          $5.54
  Account #:    XXXXXXXXXXXXX2699
  Approval #:      005716
  Transaction #: 889
  23-902280437-99
  Receipt #:      089159

APC Transaction #:           117
USPS® #             359605-9550

To check on the delivery status of
your Certified Mail™ article, visit
our Track & Confirm website at
www.usps.com or use this Automated
Postal Center™ (or any Automated
Postal Center™ at other Postal
locations).

            Thanks.
   It's a pleasure to serve you.

ALL SALES FINAL ON STAMPS AND POSTAGE.
REFUNDS FOR GUARANTEED SERVICES ONLY.

# Track & Confirm

## Search Results

Label/Receipt Number: **7196 9002 0340 3314 2268**
Expected Delivery Date: **March 26, 2011**
Class: **First-Class Mail**®
Service(s): **Certified Mail**™
              **Return Receipt**
Status: **Refused**

Your item was refused by the addressee at 4:15 pm on March 29, 2011
in LOUISVILLE, KY 40208 and is being returned to the sender.
Information, if available, is updated periodically throughout the day.
Please check again later.

Detailed Results:

• Refused, March 29, 2011, 4:15 pm, LOUISVILLE, KY 40208
• Acceptance (APC), March 23, 2011, 4:57 pm, NEW YORK, NY 10007

Notification Options

Track & Confirm by email
Get current event information or updates for your item sent to you or others

---

ite Mao      Customer Service      Forms      Gov't Services      Careers      Privacy Policy